IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| CLAUDETTE S. KAPLAN, in her capacity as the sole income beneficiary of the Claudette S. Kaplan Trust,<br><br>    Plaintiff,<br><br>v.<br><br>REGIONS BANK,<br><br>            Defendant. | No. 08-2422 |
| MARYLYN B. THOMPSON, in her capacity as co-trustee of the John B. Thompson Marital Trust and the John B. Thompson Residuary Trust, and JOHN B. THOMPSON, JR.; MARY ELIZABETH THOMPSON HALL; and AMY LOUISE THOMPSON, in their capacities as beneficiaries of the John B. Thompson Residuary Trust,<br><br>    Plaintiffs,<br><br>v.<br><br>REGIONS BANK,<br><br>            Defendant. | No. 08-2533 |
| MERITAN, INC., as sponsor of the Senior Services Pension Plan; SENIOR SERVICES PENSION PLAN; and GENERUS STEPPING STONES, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>REGIONS BANK and MORGAN ASSET MANAGEMENT, INC.,<br><br>            Defendants. | No. 08-2757 |

```
WILLIAM G. PARRIS, in his capacity as co-  )
trustee for the Sara G. Parris Grantor     )
Trust,                                     )
                                           )
     Plaintiff,                            )  No. 09-2462
                                           )
v.                                         )
                                           )
REGIONS BANK,                              )
                                           )
     Defendant.                            )
```

**ORDER DENYING DEFENDANTS' MOTIONS**

Before the Court are the January 8, 2010 Motions for Judgment on the Pleadings filed by Defendant Regions Bank ("Regions") in <u>Kaplan</u>, <u>Thompson</u>, <u>Meritan</u>, and <u>Parris</u>.  <u>See</u> Fed. R. Civ. P. 12(c).  Regions argues that the Court should dismiss Plaintiffs' state law claims based on the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 78bb(f), 77p.[1]  Morgan Asset Management ("MAM"), a Defendant in the <u>Meritan</u> action, filed a Motion to Dismiss in that case on December 31, 2009.[2]  <u>See</u> Fed. R. Civ. P. 12(b)(6).  MAM's Motion argues that Plaintiffs cannot succeed on their claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(2), and that SLUSA precludes the additional

---

[1] SLUSA amended two separate sections of the securities code in substantially identical ways.  <u>See</u> 15 U.S.C. §§ 78bb(f) and 77p.  The Court will cite to the text found in § 77bb.

[2] Regions filed a "Motion to Dismiss Pursuant to SLUSA" in <u>Meritan</u> on December 31, 2009.  (<u>See</u> Dkt. No. 53.)  That Motion appears to have been superseded by Regions' January 8 Motion.  (<u>See</u> Dkt. No. 56.)  The December 31 Motion makes the same legal argument as the January 8 Motion.  Therefore, the December 31 Motion is DENIED AS MOOT.

state law claims. Plaintiffs responded in opposition to Defendants' Motions on January 27, 2010. MAM and Regions filed their Replies on February 10 and February 24, 2010, respectively. For the following reasons, the Court DENIES Defendants' Motions.

## I. BACKGROUND

### A. <u>Kaplan</u>, <u>Parris</u>, and <u>Thompson</u>

In <u>Kaplan</u>, <u>Parris</u>, and <u>Thompson</u>, trustees or beneficiaries of trusts bring claims against Regions. Plaintiffs generally allege that Regions, acting in a fiduciary role as trustee, caused their trusts to invest in mutual funds offered for sale by Morgan Keegan, an investment bank and Regions subsidiary. These funds included the Morgan Keegan Select High Income Fund, the Morgan Keegan Select Intermediate Bond Fund, and the Morgan Keegan Select Short Term Bond Fund (collectively the "Funds"). (Thompson Compl. ¶ 19.)[3] Plaintiffs allege that, unlike the trusts' prior investments, these Funds were composed of risky, junk-bond-like investments that were unsuitable for the trusts' investment goals. (<u>Id.</u>) The Funds primarily invested in collateralized debt obligations ("CDOs") backed by subprime mortgages. (<u>Id.</u> ¶ 26.) Plaintiffs also allege that Regions did not inform them that, should they decide to replace Regions as

---

[3] The Court cites to the Complaint in Thompson as representative of Plaintiffs' allegations in all three suits.

3

trustee, the trusts' investments in the Funds would have to be liquidated because the shares could not be transferred to a non-Regions brokerage firm. (Id. ¶¶ 22, 24, 27.) When the market began to question the underlying value of the mortgages backing these CDOs, the CDOs dropped in value, causing the trusts, and therefore the Plaintiffs, to sustain large losses. (Id. ¶ 30.) Plaintiffs assert state law causes of action against Regions for breach of fiduciary duties; breach of trust; negligence; violation of the Tennessee Uniform Prudent Investor Act, Tenn. Code. Ann. §§ 35-14-101 et seq.; and violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101 et seq. (Thompson Compl. ¶¶ 48-71.)

### B. Meritan

The Meritan Plaintiffs assert federal causes of action in addition to their state law claims. Meritan, Inc. ("Meritan") is a non-profit corporation with its principal place of business in Memphis, Tennessee. (Meritan Compl. ¶ 1.)[4] Meritan sponsors Plaintiff Senior Services Pension Plan (the "Plan"), an employee benefit plan established under ERISA for Meritan's employees. (Id.) Plaintiff Generus Stepping Stones, Inc. ("Generus") is a non-profit corporation with its principal place of business in Mississippi. (Id. ¶ 2.) It is "affiliated with Meritan."

---

[4] All citations to the Meritan Complaint are to the Second Amended Complaint. (See Dkt. No. 46.)

4

(Id.)  Defendant MAM is a registered investment advisor headquartered in Birmingham, Alabama, that advised Regions about the Funds at issue.  (Id. ¶ 4.)

Meritan and Generus are charitable corporations that provide services to senior citizens.  (Id. ¶ 8.)  Meritan hired Regions in September 2003 to act as trustee of the Plan.  It informed Regions that the Plan was a defined benefit plan that was "legally required to have a certain portion of its obligations secured by existing assets."  (Id. ¶¶ 9-10.)  Thus, if the Plan suffered losses, Meritan would be required to take assets from its charitable activities and redirect them to the Plan.  (Id. ¶ 10.)  After Meritan hired Regions as trustee of the Plan, Regions entered into an Investment Advisory Services Agreement with MAM (the "Agreement").  (Id. ¶ 5.)  The Agreement gave MAM discretionary authority to invest the Plan's assets.  (Id.)

Based on the recommendations of Regions and MAM, the Plan invested $2 million in the Morgan Keegan Select High Income Fund and the Morgan Keegan Select Intermediate Bond Fund.  (Id. ¶ 11.)  Regions and MAM purchased additional shares for the Plan in those two funds in 2004, 2005, and 2006.  (Id. ¶ 14.)  In July 2006, the Plan held shares worth $3.8 million in the High Income and Intermediate Funds.  That investment equaled 29% of the Plan's assets.  (Id.)  Generus invested $93,000 of its own

5

assets in the Intermediate Fund from 2006-2007.  (Id. ¶ 15.) For the reasons alleged in the other three actions, the two funds were poor investments for the Plan and Generus.  (Compare Thompson Compl. ¶¶ 19, 26, with Meritan Compl. ¶ 16.)  On August 15, 2007, the Defendants advised Meritan that they had "made the decision" to exit the High Income and Intermediate Funds because of their drop in share price.  (Id. ¶ 19.)  Plaintiffs allege that this e-mail was misleading because Defendants had not in fact divested the Plan and Generus' positions in the two funds. (Id.  ¶ 21.)  More than half of their holdings in the High Income and Intermediate Funds remained.  (Id.)  The Plan did not completely liquidate its holdings until November 21, 2007.  It had lost more than $1.5 million or half its total investment in the two funds.  (Id. ¶ 22.)

Plaintiffs filed suit in the Chancery Court of Shelby County, Tennessee, on October 6, 2008.  Defendants removed the case to this Court on November 3, 2008, based on federal question jurisdiction.  (Notice of Removal, Dkt. No. 1); see also 28 U.S.C. §§ 1331, 1441(a).  Plaintiffs bring state law claims for common law misrepresentation, breach of fiduciary duties, negligence, and violation of the Tennessee Consumer Protection Act and Tennessee Securities Act.  (Meritan Compl. ¶¶ 24-47.)  Meritan and the Plan also bring suit under ERISA for breach of ERISA's statutory fiduciary duties.  29 U.S.C. §

6

1104(a); (Meritan Compl. ¶¶ 48-52.)  The Defendants have contested the validity of all four Complaints against them through the present Motions.

**II.   STANDARD OF REVIEW**

The Court analyses the separate Motions of Defendants Regions and MAM under the same general standard because "[t]he standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."  Monroe Retail, Inc. v. RBS Citizens, N.A., 589 F.3d 274, 279 (6th Cir. 2009) (internal quotation marks and citation omitted).  In addressing a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007).  A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007).  This standard requires more than bare assertions of legal conclusions.  Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001).  "[A] formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per

7

curiam). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (citing Twombly, 550 U.S. at 555.) Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "This plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 1950.

### III. ANALYSIS

#### A. SLUSA

Regions and MAM argue that SLUSA requires this Court to dismiss all four actions. They assert that, because the actions are consolidated with the In re Regions Morgan Keegan Securities, Derivative, and ERISA Litigation by virtue of a prior "automatic" order of this Court, they meet SLUSA's requirements for mandatory dismissal. (See, e.g., Defendant Regions' Memorandum in Support of Its Motion for Judgment on the

8

Pleadings at 8-12.) ("Regions Mem.")  Plaintiffs respond that the "automatic" order is inapplicable to them because the cases it consolidated are unrelated to the four cases currently before the Court.  (See, e.g., Plaintiff Meritan's Response in Opposition at 13-17.) ("Pls' Resp.")

Congress enacted SLUSA to halt the migration of class action securities litigation from the federal to the state courts after Congress' passage of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 77z-1, 78u-4. Atkinson v. Morgan Asset Mgmt., 664 F. Supp. 2d 898, 903 (W.D. Tenn. 2009).  The PSLRA heightened the pleading standards for actions brought under federal securities laws, mandated that courts impose fines for filing frivolous securities lawsuits, and authorized district courts to stay all discovery in securities cases pending the disposition of any motions to dismiss. Id.  To force large-scale securities litigation to occur solely in federal court, SLUSA provides that "[n]o covered class action" based on state law "may be maintained in State or Federal Court by any private party" if it alleges either 1) a false statement or omission of a material fact in relation to "the purchase or sale of a covered security" or 2) that a defendant used any "manipulative or deceptive device" in relation to the sale of stock.  15 U.S.C. § 78bb(f)(1).

9

Defendants argue that these four suits constitute a "covered class action" for purposes of SLUSA. (Regions Mem. at 8-12.)

As applied to the present cases, SLUSA defines a "covered class action" as:

> any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which—
>
> > (I) damages are sought on behalf of more than 50 persons; and
> >
> > (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

15 U.S.C. § 78bb(f)(5)(B)(ii). Defendants argue that these four cases were consolidated automatically under this Court's prior Order. That Order, entered in the master case for the Open-End Fund Litigation, stated that it would "apply automatically to all other substantively related actions arising out of or related to the same facts as alleged, or involving claims similar to those alleged . . . which have been filed, may be filed, or are transferred to this Court." (In re Regions Morgan Keegan Open-End Mutual Fund Litigation, No. 07-2784, Dkt. No. 154, at 39 (W.D. Tenn. Sept. 23, 2008).) (the "September 23 Order")  Defendants reason that, because these four cases are related to those consolidated in the September 23 Order and the total number of plaintiffs in the MDL easily exceeds fifty

persons, SLUSA precludes the present Plaintiffs' state-law claims. (Regions Mem. at 16.)

Defendants' argument fails because the September 23 Order does not apply to these four cases. On February 25, 2010, this Court entered a separate consolidation Order that consolidated Kaplan, Meritan, Olsen,[5] Parris, and Thompson. (See Meritan v. Regions Bank, No. 08-2757, Dkt. No. 69, Order Consolidating Cases for Pre-trial and Discovery Purposes (W.D. Tenn. Feb. 25, 2010).) (the "February 25 Order")  The February 25 Order recognized that these cases were distinct from those covered by the earlier September 23 Order. In Kaplan, Meritan, Parris, and Thompson, individual plaintiffs have sued Regions based solely on their status as trust beneficiaries, not as individual shareholders. If the September 23 Order automatically covered these cases, the Court's February 25 Order would have been a nullity – void from the moment of its issuance.

When considered together, Kaplan, Meritan, Parris, and Thompson have only eight named Plaintiffs,[6] well below the fifty

---

[5] The Court remanded Olsen after Plaintiffs there amended the Complaint to add MAM as a defendant, destroying diversity jurisdiction. See Olsen v. Regions Bank, No. 09-2017, 2010 U.S. Dist. LEXIS 62791, at *2 (W.D. Tenn. June 23, 2010).

[6] Defendants also filed a Motion to Dismiss based on SLUSA in Norris v. MK Holding, Inc., No. 08-2830. (See Dkt. No. 17.) The February 25, 2010 Order did not apply to Norris because Plaintiffs there objected to any consolidation. (Feb. 25 Order at 1 n.1.) The Court will consider Defendants' Motion to Dismiss in Norris in a separate order. Including the Plaintiffs from Norris in the SLUSA calculation would not affect the Court's analysis. If consolidated with the present four cases, the three Norris

11

required to trigger SLUSA preclusion. See 15 U.S.C. § 78bb(f)(5)(B)(ii)(I); In re AOL Time Warner, Inc. Secs. Litig., 503 F. Supp. 2d 666, 671 (S.D.N.Y. 2007) (finding that SLUSA preempts "nearly three dozen complaints filed throughout the country on behalf of over 200 individual plaintiffs" when those actions proceeded as one). Because the more specific February 25 Consolidation Order controls the more general September 23 Order and these four cases, proceeding together, do not have at least fifty plaintiffs, Defendants' Motions to Dismiss Plaintiffs' State Law Claims are DENIED.[7]

### B. *Meritan* ERISA Claims

MAM argues in its separate Motion to Dismiss that the Court should dismiss the Meritan Plaintiffs' ERISA claims against it because they have failed to plead adequately that MAM was a fiduciary with respect to the Plan or that MAM breached any applicable fiduciary duty. (Defendant MAM's Memorandum in Support of Its Motion to Dismiss at 5-14.) ("MAM Mem.")

---

Plaintiffs would bring the total number of Plaintiffs to eleven, still less than the required fifty. See 15 U.S.C. § 78bb(f)(5)(B)(ii)(I).

[7] Because Kaplan, Meritan, Parris, and Thompson are not consolidated under the September 23 Order, this Court need not consider whether it is appropriate to count the total number of MDL Plaintiffs or only those Plaintiffs in the cases Defendants seek to have dismissed when determining if there are fifty plaintiffs for SLUSA purposes. Compare In re AOL Time Warner, 503 F. Supp. 2d at 671 (only counting those plaintiffs in the lawsuits the defendants sought to have dismissed under SLUSA), with Evergreen Equity Trust v. Fannie Mae (In re Fannie Mae Secs. Litig.), 503 F. Supp. 2d 25, 29 nn.1-2, 31-33 (D.D.C. 2007) (implicitly including all MDL plaintiffs because the total number of plaintiffs in the affected actions, as listed in the footnotes, is less than fifty).

12

Plaintiffs respond that their Complaint meets Twombly's standard of plausibility. (Pls' Resp. at 5-11.)

MAM's first argument is that the Meritan Plaintiffs' Second Amended Complaint does not adequately allege that it is an ERISA fiduciary. (MAM Mem. at 6-9.) ERISA provides that an entity is a fiduciary, and therefore subject to ERISA's statutory fiduciary duties, if one of three things is true: 1) it actually "exercises any discretionary authority or discretionary control respecting the management of [an ERISA plan] or exercises any authority or control respecting management or disposition of [the plan's] assets"; 2) it gives investment advice for a fee or other compensation with regard to plan assets; or 3) it "has any discretionary authority or discretionary responsibility in the administration" of the plan. 29 U.S.C. § 1002(21)(A)(i)-(iii). Thus, if an entity gives financial advice to a plan for a fee, has the authority to make a discretionary decision about an ERISA plan's assets, or does exercise control over a plan's assets, the entity is a fiduciary. See id. Fiduciary status is not an all-or-nothing concept. An entity may be a fiduciary with regard to some elements of a plan and not with regard to others. Briscoe v. Fine, 444 F.3d 478, 486 (6th Cir. 2006). A plaintiff may only hold a defendant liable for "those portions of a plan over which [the defendant] exercises discretionary authority or control."

13

Id. (quoting Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc., 841 F.2d 658, 662 (5th Cir. 1998)).

In their Second Amended Complaint, the Meritan Plaintiffs allege that MAM and Regions "purchased additional shares of the Funds" for the Plan "[a]t various times in 2004, 2005, and 2006." (Meritan Compl. ¶ 14.) The Agreement between Regions and MAM, which Plaintiffs attached to their Complaint, authorizes MAM "to exercise investment discretion with respect to [the Plan] and to initiate the purchase or sale of securities or other assets therefor on a transaction-by-transaction basis without prior approval." (Agreement ¶ 4, Dkt. No. 72-1 (emphasis added).) Under the plain terms of the Agreement, MAM had the authority, if authorized by Regions, to invest the Plan's assets without prior approval. (See id.) The Second Amended Complaint alleges that MAM exercised that authority from 2004-2006 by purchasing shares of the High Income and Intermediate Funds with Plan assets. (Meritan Compl. ¶ 14.) Because, to show that MAM was an ERISA fiduciary, Plaintiffs need only allege that it had control over the investment of the Plan's assets or used that control, MAM's Motion to Dismiss Plaintiffs' suit based on their failure to adequately plead that MAM is a fiduciary is DENIED. Briscoe, 444 F.3d at 491 (holding that an entity is an ERISA fiduciary if it "exercise[s] any

14

authority or control over the covered assets" (internal quotation marks and citation omitted; emphasis in original)); see also 29 U.S.C. § 1002(21)(A)(i)-(iii).

MAM also contends that Plaintiffs have failed to state a cause of action against it for breaching its fiduciary duties. (MAM Mem. at 9-14.) "ERISA imposes high standards of fiduciary duty" on plan administrators. James v. Pirelli Armstrong Tire Corp., 305 F.3d 439, 448 (6th Cir. 2002) (internal quotation marks and citation omitted). Those duties require fiduciaries to make all decisions on the basis of the beneficiaries' best interests, to act with the care and skill of a prudent person acting under the same circumstances, and to act for no purpose other than providing benefits for plan participants. 29 U.S.C. § 1104(a)(1). MAM argues that Plaintiffs have failed to plead facts that plausibly support their claims that MAM breached its duty of prudence, to diversify, and to disclose. (MAM Mem. at 10-14.)

MAM's assertions that the Court should dismiss Plaintiffs' breach of fiduciary duties claims are based largely on its argument that Plaintiffs have failed to plead adequately that MAM is a fiduciary. (See id. at 10-12 (arguing that MAM cannot have breached the duty of prudence or the duty to diversify because MAM was not a fiduciary with regard to investing plan

15

assets).)  Because the Court has rejected that argument above, it necessarily fails here as well.

MAM's argument that Plaintiffs may not bring an ERISA claim to remedy any alleged wrongs, but must file a derivative suit is refuted by the plain text of the statute.  (MAM Mem. at 11.) ERISA provides that any Plan "participant, beneficiary, or fiduciary may bring an action for relief" for violation of ERISA's fiduciary duties.  29 U.S.C. § 1132(a)(2); see also 29 U.S.C. § 1109(a).  MAM does not dispute that Plaintiffs are Plan participants, beneficiaries, or fiduciaries.  (See MAM Mem. at 10-12.)  Indeed, the only case MAM cites to support its argument that Plaintiffs cannot recover under ERISA does not mention the ERISA statute.  See In re Dreyfus Aggressive Growth Mut. Fund Litig., No. 98 Civ. 4318(HB), 2000 U.S. Dist. LEXIS 94, at *11-15 (S.D.N.Y. Jan. 6, 2000) (concluding that the plaintiffs failed to state a claim under the Investment Company Act of 1940, 15 U.S.C. §§ 80-a et seq., and must bring their claims derivatively).  The Court, therefore, DENIES MAM's Motion to Dismiss based on its assertion that Plaintiffs must bring their claims derivatively.

MAM finally argues that Plaintiffs' allegations that MAM made faulty disclosures to Plan beneficiaries is impermissible because Plaintiffs seek to expand the disclosure requirements beyond the requirements of ERISA.  (MAM Mem. at 13-14.)  In

16

Sprague v. Gen. Motors Corp., 133 F.3d 388, 405 (6th Cir. 1998) (en banc), the Sixth Circuit warned against interpreting ERISA's fiduciary duty standards to "imply a duty to disclose information that ERISA's detailed disclosure provisions do not require to be disclosed." (citation omitted) Plaintiffs allege that MAM and Regions affirmatively misrepresented the actions they were taking to protect the Plan's assets from the declining share price of the High Income and Intermediate Funds. The Second Amended Complaint states that MAM and Regions represented to the Plaintiffs that they were liquidating the Plan's entire holdings in those two funds when, in fact, they sold only a portion of the Plan's shares. (Meritan Compl. ¶¶ 19-20.) The Sixth Circuit has held that a fiduciary violates its ERISA duties by providing misleading material information to Plan participants. James, 305 F.3d at 449, 451. Whether Plaintiffs can produce sufficient evidence to succeed on this claim is better left for later determination. MAM's Motion to Dismiss Plaintiffs' ERISA claims is DENIED.

### IV.   CONCLUSION

Defendants' Motions for Judgment on the Pleadings based on SLUSA are DENIED because the Kaplan, Meritan, Parris, and Thompson actions were not consolidated with the remainder of the MDL cases by this Court's September 23 Order. Because the Court has denied the SLUSA Motions, the Motion to Unconsolidate in

Thompson (see Dkt. No. 31) and the Motion for a Protective Order in Meritan (see Dkt. No. 67) are DENIED AS MOOT, both being premised on those cases having been consolidated under the September 23 Order.  The Motion to Dismiss the Meritan Plaintiffs' ERISA claims is also DENIED.

So ordered this 27th day of September, 2010.

                                                s/ Samuel H. Mays, Jr.
                                                SAMUEL H. MAYS, JR.
                                                UNITED STATES DISTRICT JUDGE